ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
V. RANDALL GARD (SBN 151677)
rgard@carrferrell.com
CHRISTOPHER P. GREWE (SBN 245938)
cgrewe@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:  (650) 812-3444

Attorneys for Plaintiff and Counter-Defendant
MARK L. MCHUGH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK L. MCHUGH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HILLERICH & BRADSBY CO., a private company,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. C 07-03677 JSW<br><br>**PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Date:        August 26, 2008<br>Time:        2 p.m.<br>Judge:       Hon. Jeffrey S. White<br>Courtroom:   Courtroom 2, 17th Floor |

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 1

II.    OVERVIEW OF THE '091 PATENT ..................................................................... 2

III.   ARGUMENT ........................................................................................................... 3

    A.    Claim Construction Principles ...................................................................... 3

    B.    The Four Terms Requiring Construction ....................................................... 4

        1.    The plain and ordinary meaning of the term "member" is
            "component." ............................................................................................ 4

            a.    *H&B's construction requires the Court to construe the
                term "comprising" as having no function in the claim.* .................. 6

            b.    *H&B's construction of member to include a specific
                length limitation is inconsistent with the intrinsic
                evidence.* ....................................................................................... 7

            c.    *The term "resilient" does not require construction.* ..................... 8

        2.    The plain and ordinary meaning of the term "retainer" is
            "hand grip element for positioning and retaining the member." .............. 10

            a.    *H&B's construction of "retainer" excludes the
                preferred embodiment claimed in claims 5, 7 and 13.* ................. 11

            b.    *H&B demands the construction of the phrase
                 "connected to the member" but offers no construction
                thereof.* ......................................................................................... 12

        3.    The term "in a gap" refers to a location. ................................................ 13

        4.    The term "attachment" should be construed to mean "glove
            component which secures the member to the glove." ............................... 17

    C.    The Remaining Terms Submitted By H&B Do Not Require
        Construction. .............................................................................................. 19

        1.    The phrase "adjacent to the base of the user's fingers" does
            not require construction. ......................................................................... 19

         2.    The phrase "base of the of the user's fingers" does not require
            construction. ........................................................................................... 22

        3.    The phase "includes a plurality of sub-members" does not
            require construction. ............................................................................... 22

         4.    The phrases "retain the member" and "configured to fit" do
            not require construction. ......................................................................... 24

IV.    CONCLUSION ...................................................................................................... 25

i

# TABLE OF AUTHORITIES

## CASES

*Altiris, Inc. v. Symantec Corp.,*
318 F.3d 1363 (Fed. Cir. 2003) .................................................................................3, 4

*CCS Fitness, Inc. v. Brunswick Corp.,*
288 F.3d 1359 (Fed. Cir. 2002) ....................................................................................4, 5

*General American Transportation Co. v. Cryo-Trans, Inc.,*
93 F.3d 766 (Fed. Cir. 1996) ..........................................................................................20

*Haworth, Inc. v. Herman Miller, Inc.,*
37 U.S.P.Q. 2d 1080 (W.D. Mich. 1994) ......................................................................20

*Innova/Pure Water, Inc. v. Safarai Water Filtration Sys., Inc.,*
381 F.3d 1111 (Fed. Cir. 2004) .........................................................................3, 10, 14

*NTP, Inc. v. Research In Motion, Ltd.,*
418 F.3d 1282 (Fed. Cir. 2005), .................................................................................4, 25

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) .................................................................................3, 4, 20

*Power Mosfet Tech., LLC v. Siemens AG,*
378 F.3d 1396 (Fed. Cir. 2004) ........................................................................................7

*Renishaw PLC v. Marposs Societa' per Azioni,*
158 F.3d 1250 (Fed.Cir.1998) ..................................................................................12, 19

*SanDisk Corp. v. Memorex Products, Inc.,*
415 F.3d 1278 (Fed. Cir. 2005) .......................................................................................12

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
299 F.3d 1313 (Fed. Cir.2002) .................................................................................3, 4

*Transclean Corp. v. Bridgewood Services, Inc.,*
290 F.3d 1364 (Fed. Cir. 2002) .........................................................................................9

*W. Baran, M.D. v. Medical Device Tech., Inc.,*
519 F.Supp.2d 698 (N.D. Ohio 2007) ..............................................................................5

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.,*
442 F.3d 1322 (Fed. Cir. 2006) ......................................................................................23

*York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.,*
99 F.3d 1568 (Fed. Cir. 1996) ........................................................................................24

## OTHER AUTHORITIES

Landis on Mechanics of Patent Claim Drafting,
Appendix C-5 to C-6. ........................................................................................................5

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

# I.  INTRODUCTION

Only four terms of U.S Patent No. 5,806,091 (the "'091 Patent") require interpretation by the Court.  Mark L. McHugh ("McHugh") offers constructions reflecting each term's plain and ordinary meaning.  In contrast, Hillerich & Bradsby Co. ("H&B") demands the interpretation of countless terms and requests the Court's adoption of constructions that deviate, without support, from these terms' plain meaning.  In some constructions, H&B imports preferred embodiments as claim limitations.  In some constructions, H&B excludes expressly claimed embodiments.  In all cases, H&B's proposed constructions violate clear claim construction principles.

H&B's construction of claim 1 illustrates H&B's general approach to claim construction.  In claim 1, H&B demands the construction of roughly half the words in the claim and replaces terms that have a plain and ordinary meaning with excerpts from the specification that might help create a non-infringement position.  H&B's suggests a complete reconstruction of claim 1, which would read as follows:

> A hand grip [~~configured to fit~~] ***designed to fi*t** in a user's hand and for use with a handled instrument, comprising:
>
> [~~an elongated resilient member~~] ***a long and narrow grip having a length greater than three times an average width made of plastic, rubber, or other flexible material that extends across two or more fingers*** having an average width of approximately 4-15 mm and an average thickness of approximately 1-10 mm and [~~configured to fit~~] ***designed to fit*** [~~at a base of the user's fingers~~] ***the location where the palm joins the fingers*** [~~in a gap between a palm of the user's hand and the base of the user's fingers~~] ***filing the space or void above the palm of the hand and below the base of the fingers to prevent the superficial transverse metacarpal ligament, associated tissue, and skin of the palm extending over the base of the fingers when a handle is grasped***; and
>
> [~~a retainer connected to the member~~] ***an elastic band, strap or T-shaped brace connected to the grip*** and configured to extend around to the backside of at least one of the user's fingers [~~to retain the member~~] ***to hold or secure the grip*** in the user's hand [~~adjacent to the base of the user's fingers~~] ***below the base of the user's fingers.***

The unnecessary and unsupported constructions of H&B should be rejected in favor of the plain and ordinary meaning of the claim terms as proposed in McHugh's constructions.

## II. OVERVIEW OF THE '091 PATENT

The '091 Patent, titled "Hand Grip Aid," issued on September 15, 1998.  The '091 Patent is directed to devices that help prevent hand damage (such as blisters and calluses) and discomfort when a person uses sports equipment, exercise equipment, manual work equipment and any other equipment that has a handle. '091 Patent, 1:6-16.  One advantage of the invention is that hand damage and discomfort is reduced while a good tactile feel and a strong grip are provided. *Id.,* 1:57-59.  Another advantage is that the invention can be worn with or built directly into a glove. *Id.,* 1:59-63, 4:66-5:2.  Indeed, the specification describes various glove embodiments, and claims 5, 7 and 13-15 expressly claim specific glove embodiments. *Id.,* 2:13-2:17, 3:52-56; 4:31-44, 4:64-5:2; 5:35-47; 5:56-59, 6:4-14.

There are two components to the hand grip aid claimed in the '091 Patent: (1) a member and (2) a retainer.  *See id.,* 5:11-6:14 (claim 1 and its dependent claims). The first component – the member – has specific dimensions for width and thickness and is configured to fit at a specific location in the fingers. *Id.*  The '091 Patent claims various embodiments of the member.  These claimed embodiments include, for example: a member with a plurality of undulations and protuberance to fit between a user's fingers (claim 2); a member with a plurality of undulations and protuberance to fit between less than four of a user's fingers (claim 3); an inflatable member (claims 8, 10 and 14); an inflatable member with a pump (claims 9, 11 and 15); and a plurality of sub-members (claim 12). *See id.,* 5:22-31; 5:46-59, 6:-14.

The second component – the retainer – is connected to the member and configured to fit around the backside of a user finger or fingers and retain the member at the specific location in the fingers.  In addition to claiming a retainer generally (*see* claim 1 of the '091 Patent), specific types of retainers are expressly claimed in the dependent claims.  These expressly claimed retainer embodiments include: an elastic strap (claims 4 and 6); and a glove (claims 5, 7 and 13). *Id.,* 5:32-47, 6:4-8.

In this litigation, McHugh has asserted four claims against H&B's Bionic Gloves:
- independent claim 1, which claims a hand grip comprising a member and retainer;
- claim 5 (depends from claim 1), which claims a hand grip comprising a member and a retainer,

2

wherein the retainer is a glove;

- claim 12 (depends from claim 1), which claims a hand grip comprising a member and a retainer, wherein the member includes a plurality of sub-members; and

- claim 13 (depends from claim 12), which claims a hand grip comprising a member and a retainer, wherein the member includes a plurality of sub-members and the retainer is a glove (i.e., a glove with a plurality of sub-members).

### III.  ARGUMENT

**A.    Claim Construction Principles**

A court's "claim construction analysis must begin and remain centered on the claim language itself, for that is the language that the patentee has chosen to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1116 (Fed. Cir. 2004)(internal quotations and citations omitted).  The "ordinary meaning" is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005).  The written description, the drawings, and the prosecution history provide context and clarification regarding the intended meaning of the claim terms. *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1324-25 (Fed. Cir. 2002).  Dictionaries may also play a role in the determination of the plain and ordinary mean of a claim term. *See Phillips,* 415 F.3d at 1322 ("Dictionaries or comparable sources are often useful to assist in understanding the commonly understood meanings of words").

"Essentially, claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from that meaning." *Altiris, Inc. v. Symantec Corp.,* 318 F.3d 1363, 1370 (Fed. Cir. 2003) (quoting *Teleflex,* 299 F.3d at 1327).  An intent to deviate from a term's ordinary meaning can generally only be shown if: (1) "the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history; (2) "the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention"; or (3) "the term chosen by the patentee so deprives the claim of clarity as to require resort to the other intrinsic evidence for a definite meaning." *Id.,* (quoting *CCS*

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

1    *Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366-67 (Fed. Cir. 2002).

2         Another basic precept of claim construction—one violated frequently in H&B's proposed

3    constructions—is that limitations from the specification (such as from the preferred embodiment)

4    may not be read into the claims, absent the inventor's express intention to the contrary. *Teleflex,*

5    299 F.3d at 1326; *see also CCS Fitness,* 288 F.3d at 1366 ("[A] patentee need not 'describe in the

6    specification every conceivable and possible future embodiment of his invention.'")(internal

7    citation and quotation omitted).  "[A]lthough the specification often describes very specific

8    embodiments of the invention, we have repeatedly warned against confining the claims to those

9    embodiments." *See Phillips,* 415 F.3d at 1323.  To protect against this result, a court's focus should

10   remain on understanding how a person of ordinary skill in the art would understand the claim

11   terms. *Id.*

12   **B.**    **The Four Terms Requiring Construction**

13        McHugh believes that only four terms require construction by the Court: (1) member; (2)

14   retainer; (3) attachment; and (4) in a gap.  H&B has proposed additional terms for construction by

15   the Court; however, such terms reflect their plain and ordinary meaning and do not require

16   construction.  Indeed, claim construction is not meant to be an academic exercise in which a court

17   pronounces the meaning of every aspect of a patent claim at issue.  Instead, "claim construction is a

18   matter of resolution of disputed meanings and technical scope, to clarify and when necessary to

19   explain what the patentee covered by the claims, for use in the determination of infringement. It is

20   not an obligatory exercise in redundancy." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282,

21   1311 (Fed. Cir. 2005), *cert. denied,* 126 S. Ct. 1174  (U.S. 2006) (*citing U.S. Surgical Corp. v.

22   Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)(emphasis added).

23        **1.**    **The plain and ordinary meaning of the term "member" is "component."**

24        The term "member" appears in claims 1, 5, 12 and 13 of the '091 Patent.  The following

25   chart compares the parties' constructions.

**PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF**
**(Case No. C 07-03677 JSW)**

| McHugh's Construction | **Actual Language** | H&B's Construction |
|---|---|---|
| component | **member** | a grip having a length greater than three times an average width made of plastic, rubber, or other flexible material that extends across two or more fingers[1] |

The term "member" is a common term of art in patent claims. Indeed, Landis notes that "member" is a general term for a structure as commonly found in the vocabulary used in the mechanical arts and patents. *See* Landis on Mechanics of Patent Claim Drafting, Appendix C-5 to C-6.

Courts have agreed. For example, in *CCS Fitness Inc. v. Brunswick Corp.*, the court stated that "member" refers to a "structural unit" or a "distinct part of a whole." *CCS Fitness,* 288 F.3d at 1367 (citing McGraw-Hill Dictionary of Scientific and Technical Terms, 1237 (5th ed. 1994); American Heritage Dictionary 849 (3d ed. 1996)); *see also W. Baran, M.D. v. Medical Device Tech., Inc.,* 519 F.Supp.2d 698, 714 (N.D. Ohio 2007) (defining "member" as "a constituent part of a whole . . . an essential part of a framed structure, a machine, or a device. . . a part of a whole"). The court in *CCS Fitness* resultantly held that "'member' denotes a beam-like structure that is 'a single unit in a larger whole'" and noted that an accused infringer "cannot use the intrinsic evidence's silence to narrow the ordinary meaning of an unambiguous claim." *CCS Fitness,* 288 F.3d at 1367-68. On the face of the claims, McHugh's construction of "member" to mean "component" is consistent with its general use in claim drafting.

The intrinsic evidence supports the application of McHugh's construction. Indeed, the intrinsic evidence does not demonstrate any intent to deviate from the ordinary and accustomed meaning of "member." The term "member" appears in claims 5, 12 and 13 on an antecedent basis in reference to claim 1, which reads:

---

[1] H&B's construction is for the phrase "elongated resilient member," not just "member." Despite the parties' good faith efforts to comply with Judge White's Standing Order on Patent Cases, the parties were unable to agree on the identity of all terms required for construction. Where applicable, this disagreement is noted and discussed in turn. Although McHugh asserts that term "elongated" does not require construction, he withdraws his 'if necessary' construction. As such, the term "elongated" is not addressed here.

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

A hand grip configured to fit in a user's hand and for use with a handled instrument, *comprising*:

an elongated resilient ***member*** having an average width of approximately 4-15 mm and an average thickness of approximately 1-10 mm and configured to fit at a base of the user's fingers in a gap between a palm of the user's hand and the base of the user's fingers; and

a *retainer* connected to the member and configured to extend around to the backside of at least one of the user's fingers to retain the member in the user's hand adjacent to the base of the user's fingers.

'091 Patent, 5:11-21 (claim 1) (emphasis added to evidence that a member is a component comprising a part of the grip). The term "member" is a structure defined by the express claim language that follows it. The "member" in claim 1 is defined as having specific width and thickness dimensions ("having an average width of approximately 4-15 mm and an average thickness of approximately 1-10 mm") and location ("configured to fit at a base of the user's fingers in a gap between a palm of the user's hand and the base of the user's fingers"). *See id.* This express claim language supports the construction of member to mean "component," and the claims do not evidence any intent to deviate from this plain and ordinary meaning.

An intent to deviate is not found anywhere in the intrinsic evidence. The term "member" appears sixteen times in the specification. With regard to each reference, McHugh did not "clearly set forth a definition of the disputed claim term" that would demonstrate an intent to deviate from the plain and ordinary meaning of "member" as a component of a hand grip. *See Altiris,* 318 F.3d at 1370. The prosecution history provides no such intent either– via a definition of the term, disclaiming subject matter or describing a particular embodiment as important to the invention.

Accordingly, the Court should construe the term "member" to mean: "**component.**"

       a.    **H&B's construction requires the Court to construe the term "comprising" as having no function in the claim.**

As noted in Section III(B)(1) *supra*, the hand grip claimed in '091 Patent *must* comprise two elements: (1) a member; and (2) a retainer. *See* '091 Patent, 5:11-21 (claim 1) ("A hand grip . . . *comprising*: [a] member . . .; *and* a retainer")(emphasis added). "'Comprising', while permitting additional elements not required by a claim, does not remove the limitations that are present." *Power Mosfet Tech., LLC v. Siemens AG,* 378 F.3d 1396, 1409 (Fed. Cir. 2004) (emphasis added). H&B improperly construes "member" to mean "grip" and effectively removes the second claimed

6

1 limitation of claim 1 (i.e., the retainer). Indeed, if "grip" and "member" can be used

2 interchangeably as proposed by H&B, the retainer component of claim 1 becomes optional. H&B's

3 circular construction is improper and should be rejected for this reason.

> b.  **H&B's construction of member to include a specific length limitation is inconsistent with the intrinsic evidence.**

The express language of claim 1 does not require a specific length limitation. As noted

*supra* in Section III(B)(1), the term "member" is expressly defined by the claim language as having

specific width and thickness dimensions. *See* Section III(B)(1); *see also* '091 Patent, 5:11-21

(claim 1)(" an elongated resilient member having an average width of approximately 4-15 mm and

an average thickness of approximately 1-10 mm"). A specific length limitation is notably absent

from the claims.

The express language of the specification similarly does not require a specific length

limitation. Indeed, H&B seeks to add this limitation based on the following description of the

preferred embodiments of Figures 2A and 2B:

> Exemplary embodiments are described herein with reference to specific configurations. . . . A first embodiment is described with reference to FIGS. 1-2. . . . FIGS. 2A-B depict an embodiment of a grip . . . In this aspect of the invention, as shown in FIGS. 2A-B, grip 20 is an elongated member that has a total length greater than three times an average thickness and greater than three times an average width.

'091 Patent, 2:24-25, 2:29-30, 2:43, 3:10-13. The specification expressly states, however, that "the

grip <u>can be made to **any** total length</u> that is consistent with human hands." '091 Patent, 3:6-7

(emphasis and underlining added). The specification further notes that Figures 2A and 2b are not

limitations of the invention:

> <u>**Another embodiment is depicted in FIG. 4, where grip 40 is shorter than grip 20 shown in FIGS. 2A-B. In some cases, the user may wish a grip to fit next to one, two, or three fingers rather than four**</u>. . . . This embodiment may be useful where a handle grip area is particularly small and where only a small grip 30 can be accommodated. An example is a golf club, where only three fingers may grip the handle such as in an interlocking grip.

'091 Patent, 4:19-28 (emphasis and underlining added). In short, the specification contradicts

H&B's proposed construction.

Further, McHugh specifically abandoned a specific length limitation – the same limitation

7

that H&B now seeks to revive via its construction – during the prosecution of the '091 Patent. A specific length limitation was proposed during prosecution; however, such language was rejected by the Examiner and expressly abandoned by the patentee in favor of specific dimensions for thickness and width. *See* '091 Patent File Wrapper, Amendment after Non-Final Rejection, p.1, 06/12/96; *cf. id.,* Preliminary Amendment to Continued Prosecution Application, p.1 (claim 1), 12/01/97.[2]  Indeed, the first amendment to claim 1 of the Continued Prosecution Application reads as follows:

> A hand grip configured to fit in a user's hand and for use with a handled instrument, comprising:
>> an elongated resilient member having average width of approximately 4-15 mm and an average thickness of approximately 1-10 mm and configured to fit at a base of the users fingers in a gap between a palm of the user's hand and the base of the user's fingers; and
>> a retainer connected to the member and configured to extend around to the backside of at least one of the user's fingers to retain the member in the user's hand adjacent to the base of the user's fingers.

*Id.,* Preliminary Amendment to Continued Prosecution Application, p.1 (claim 1), 12/01/97.

The abandonment of the length limitation in favor of specific width and thickness dimensions was in response to the Examiner's comments in an August 12, 1997 Examiner Interview that "recitation of the specific dimensions of the hand grip" (i.e., "having average width of approximately 4-15 mm and an average thickness of approximately 1-10 mm") would define patentable subject matter over the prior art. *See id*., Amendment After Final Rejection, p.3, 8/19/1997; *see also* '091 Patent File Wrapper, 8/12/97 Examiner Interview Summary Record.[3]  In sum, H&B's addition of a specific length limitation is inconsistent with the intrinsic evidence, and H&B's construction should be rejected for this reason.

### c.  *The term "resilient" does not require construction.*

The term "resilient" reflects the plain and ordinary meaning intended by the patentee and does not require construction. H&B improperly seeks to narrow the claims by limiting the member

---

[2] Attached as Exhibit 10 and 12, respectively, to McHugh's Evidence in support of McHugh's Opening Claim Construction Brief ("McHugh's Evidence).

[3] Attached as Exhibit 9 and 11, respectively, to McHugh's Evidence.

1  to being "made of plastic, rubber, or other flexible material."  H&B's construction does not offer a

2  definition for "resilient;" rather, it merely replaces the term "resilient" with narrower language

3  cherry picked from the specification.

4      The term "resilient" has a plain and ordinary meaning that is well known in the art.  For

5  example, in *Transclean Corp. v. Bridgewood Services, Inc.*, the court stated that the term "resilient"

6  encompasses "that which returns to its original shape following a deformation in shape."

7  *Transclean Corp. v. Bridgewood Services, Inc.* 290 F.3d 1364, 1374-75 (Fed. Cir. 2002) (citing

8  *McGraw-Hill Dictionary of Scientific and Technical Terms* 1693 (5th ed. 1994); *American Heritage*

9  *Dictionary* 1535 (3rd ed. 1992)).  Indeed, there are generally no alterative meanings for "resilient."

10  *See e.g., American Heritage Dictionary* 1484 (4th ed. 2000) ("resilient" defined as "capable of

11  returning to an original shape or position, as after having been compressed"); *Webster's Third New*

12  *International Dictionary, Unabridged,* 1932 Merriam-Webster (2002) ("resilient" defined as

13  "returning freely to a previous position, shape or condition"); *Webster's Encyclopedic Unabridged*

14  *Dictionary of the English Language* 867 (1996) ("resilient" defined as "tending to recover readily

15  from fatigue or depression"); *New Oxford American Dictionary of English* 1441 (2nd ed. 2005)

16  ("resilient" defined as "able to recoil or spring back into shape after bending, stretching, or being

17  compressed").[4]

18      Replacing the term "resilient" with the requirement that the member be "made of plastic,

19  rubber, or other flexible material" is improper.  The specification expressly states that "***[a]ny type***

20  ***of resilient material***, such as plastic or rubber, can be used for the invention."  '091 Patent, 2:64-65

21  (emphasis added).  The specification further describes various additional embodiments of resilient

22  members. *See id*., 3:63-4:18 (describing a molded member); *id.,* 4:45-63 (describing a glove

23  incorporating a plurality of sub-members).  The specification rejects H&B's cherry-picked

24  limitation that "resilient members" requires that the member be limited to being "made of plastic,

25  rubber, or other flexible material." H&B's construction should be rejected for this reason.

26      In the event that "resilient" requires construction, McHugh proposes an alternative

27  _____

28  [4] Attached as Exhibit 3 to McHugh's Evidence.

**PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF**
**(Case No. C 07-03677 JSW)**

construction of "resilient" to mean "elastic."  The term "elastic" denotes the elastic properties of a

resilient member's ability to return to its original shape following a deformation in shape.  The term

"flexible" fails to provide for this ability to return to an original shape.  Accordingly, McHugh

asserts that the term "resilient" does not require construction; and if any construction were

provided, the term "resilient" should be construed to mean: "elastic."

> **2.     The plain and ordinary meaning of the term "retainer" is "hand grip element for positioning and retaining the member."**

The term "retainer" appears in claims 1, 4-7 and 13 of the '091 Patent.  The following chart

compares the parties' constructions.

| McHugh's Construction | **Actual Language** | H&B's Construction |
|---|---|---|
| hand grip element for positioning and retaining the member | **retainer** | an elastic band, strap or T-shaped brace |

The express claim language surrounding the term "retainer" defines what the term means.

*See Innova/Pure Water*, 381 F.3d at 1116 ("claim construction analysis must begin and remain

centered on the claim language itself, for that is the language that the patentee has chosen to

particularly point out and distinctly claim the subject matter which the patent regards as his

invention.") (internal quotations and citations omitted).

Here, the express language of the claims compels the construction of the general structure

"retainer" to mean "hand grip element for positioning and retaining the member."  Claim 1, in

pertinent part, reads:

> a ***retainer*** connected to the member and configured to extend around to the backside of at least one of the user's fingers to ***retain the member in the user's hand*** adjacent to the base of the user's fingers.

'091 Patent, 5:11-21 (claim 1) (emphasis added).  The express language of the claim defines

"retainer" as a "hand grip element for positioning and retaining the member."  Dependent claims 4-

7 and 13 of the '091 similarly compel the adoption of McHugh's construction.  Those dependent

claims relate to specific embodiments of a retainer, including a glove embodiment and an elastic

strap embodiment, which are simply "hand grip elements for positioning and retaining the

member." *See* '091 Patent, 5:32-34 (claim 4) ("retainer is an elastic strap"); *id.* 5:35-39 (claim 5)

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

("the retainer is a glove"); *id.,* 5:40-42 (claim 6)("the retainer is a elastic strap"); *id.,* 5:43-47 (claim 7) ("the retainer is a glove"); *id.,* 6:4-8 (claim 13) ("the retainer is a glove").   The specification further compels McHugh's construction stating:

> A flexible elastic band retainer 26 is provided to attach to the user's finger *so that the grip 20 will remain in the proper position.*

'091 Patent, 2:55-57 (emphasis added).  In short, the intrinsic evidence supports and compels the construction of retainer as proposed by McHugh.

Accordingly, the Court should construe the term "retainer" to mean: "**hand grip element for positioning and retaining the member.**"

### a.    *H&B's construction of "retainer" excludes the preferred embodiment claimed in claims 5, 7 and 13.*

The adoption of H&B's construction will quite improperly result in the exclusion of a preferred and claimed embodiment – where the retainer is a glove.  For obvious reasons, H&B hopes to exclude the glove embodiment claimed expressly in dependent claims 5, 7 and 13 via its construction of "retainer" to mean "an elastic band, strap or T-shaped brace" in order to escape direct infringement by H&B's Bionic Glove Series.  The claimed and preferred embodiments of dependent claims, 5, 7 and 13 that are excluded by H&B's construction of "retainer" read as follows:

> *Claim 5*
> A hand grip as in claim 1, wherein:
> **the retainer is a glove** configured to secure around the user's fingers and including an attachment to retain the elongated member in a position adjacent to the base of the user's fingers. ('091 Patent, 5:35-39 (emphasis added).)
>
> *Claim 7*
> A hand grip as in claim 2, wherein:
> **the retainer is a glove** configured to secure around the user's fingers and including an attachment to retain the elongated member in a position adjacent to the base of the user's fingers. ('091 Patent, 5:43-47 (emphasis added).)
>
> *Claim 13*
> A hand grip as in claim 12, wherein:
> **the retainer is a glove** configured to secure around the user's fingers and including an attachment to retain the elongated member in a position adjacent to the base of the user's fingers.  ('091 Patent, 6:4-8 (emphasis added).)

The specification refers to these expressly claimed glove embodiments, noting that "if desired, grip

20 can be made without band 26" and stating:

> Another advantage of the invention is that it can be worn with a glove or without a glove and still achieve the same beneficial results or built directly into a glove or part of a glove for ease of use and convenience. . . .
>
> Grip 20 may be used adhered to, attached to, or not attached to the user's hand. Grip 20 may also be used with a glove, if desired. . . .
>
> Another embodiment is depicted in FIG. 5A, where a glove 50 [i.e., the retainer] includes an attachment 52 for a hand grip 20.

'091 Patent, 1:59-62; *id.,* 2:63; *id.,* 3:52-56; *id.,* 4:31-44; *id.,* 4:64-5:2.

The specification further states:

> A flexible elastic band retainer 26 is provided to attach to the user's finger *so that the grip 20 will remain in the proper position.* Although an elastic band is shown, **any similar type retainer can be used to attach to the user**, such as a velcro strap or a non-elastic strap. A T-shaped brace retainer is also envisioned where the base of the T is attached to the grip 20 and the brace fits between the middle finger and ring finger.

'091 Patent, 2:55-62 (emphasis added).  This reference to a retainer as "an elastic band" or "any similar type retainer" evidences the retainer is a general structure and should not be limited solely to the preferred embodiments – excluding the glove embodiment – described in the specification, as proposed by H&B.  *See Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1250 (Fed.Cir.1998) ("if an apparatus claim recites a general structure without limiting that structure to a specific subset of structures, we will generally construe the term to cover all known types of that structure.").

Adopting H&B's construction will result in excluding a preferred *claimed* embodiment and unnecessarily limiting claims to other disclosed embodiments..  The Federal Circuit strongly disfavors such claim constructions, declaring them "rarely correct." *See SanDisk Corp. v. Memorex Products, Inc.,* 415 F.3d 1278, 1285 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed.Cir.1996)). For this reason, H&B's construction should be rejected.

> b.     **H&B demands the construction of the phrase "connected to the member" but offers no construction thereof.**

H&B requests the construction of the entire phrase "a retainer connected to the member," not just "retainer."  Despite this request, H&B has not offered a new construction for "connected to

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

the member."  Indeed, H&B has simply construed the phrase "connected to the member" as

"connected to the grip."  This construction offers nothing other than H&B's reassertion of its

construction of the term "member" to mean "grip," which was addressed in detail *supra* in Section

III(B)(1)(a).  As such, McHugh does not address it here.

### 3.   The term "in a gap" refers to a location.

The term "in a gap" appears in claims 1 and describes the location of the member in a user's

fingers.  Claim 1 reads, in pertinent part:

> an elongated resilient member having an average width of approximately 4-15
> mm and an average thickness of approximately 1-10 mm and configured to fit at a
> base of the user's fingers ***in a gap*** between a palm of the user's hand and the base
> of the user's fingers

'091 Patent, 5:11-17 (emphasis added).  The crux of the dispute between the parties relates to the

purpose of this term.  McHugh construes "in a gap" to refer to the appropriate location in the hand.

In contrast, H&B construes the term to refer to a particular result.  The following chart compares

the parties' constructions.

| McHugh's Construction | Actual Language | H&B's Construction |
|---|---|---|
| in the proximal digital crease of the user's hand | **in a gap** | filling the space or void above the palm of the hand and below the base of the fingers to prevent the superficial transverse metacarpal ligament, associated tissue, and skin of the palm extending over the base of the fingers when a handle is grasped[5] |

McHugh's construction of "in a gap" to refer to a location is consistent with and compelled

by the express language of claim 1.  *See Innova/Pure Water*, 381 F.3d at 1116 ("claim construction

analysis must begin and remain centered on the claim language itself, for that is the language that

the patentee has chosen to particularly point out and distinctly claim the subject matter which the

patent regards as his invention.") (internal quotations and citations omitted).  The express language

of claim 1 requires that the member is configured to fit as a specific location in a user's fingers.

---

[5] H&B's construction is for the phrase "in a gap between a palm of the user's hand and the base of
the user's fingers," not just "in a gap."

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

'091 Patent, 5:11-21 (claim 1) ("an elongated resilient member . . . configured to fit at a base of the user's fingers in a gap between a palm of the user's hand and the base of the user's fingers").

The specification describes this "in a gap" location. For example, the specification states: "A hand grip fits in the user's hand near where the palm joins the fingers . . . The member is placed adjacent to the user's fingers and superficial transverse metacarpal ligament." '091 Patent, 1:43-48. The specification further describes this location in relation to specific components of the hand, referring to Figures 1 and 2 for that purpose:

- "FIG. 1 is a palm view of a human hand showing the metacarpal bones, the phalanges, and the superficial transverse metacarpal ligament."
  '091 Patent, 2:1-3.

- "A first embodiment is described with reference to FIGS. 1-2. FIG. 1 is an illustration of a human hand 10. The hand has a palm region 12 and four fingers 14a-d. The hand 10 includes metacarpal bones (palm bones) 17 and the proximal phalanges (base finger bones) 18. A superficial transverse metacarpal ligament 16 serves to connect the metacarpal bones 17 near where the proximal phalanges 18 couple with the metacarpal bones 17."
  '091 Patent, 2:29-26.

- "FIGS. 2A-B depict an embodiment of a grip 20 designed to fit adjacent to the ligament 16 and adjacent to the proximal phalanges 18 (the base sections of finger bones). Note that the grip 20 has one side with an undulating surface 22 and one side with a substantially planar surface 24. The undulating surface 22 is designed to accommodate the user's fingers and to fit comfortably in the user's hand 10 adjacent to ligament 16 and the base of fingers 14."
  '091 Patent, 2:43-50.

In short, the express language of claim 1 and the specification identify the location "in a gap" where the member is configured to fit.

McHugh's construction of the term "in a gap" to mean "in the proximal digital crease of the user's hand" reflects this location. Indeed, the proximal digital crease of the hand is the medical term for the crease located at the base of the user's fingers. *See* KEITH L. MOORE, PHD, FIAC, FRSM & ANNE M.R. AGUR, BSC(OT), MSC PHD, ESSENTIAL CLINICAL ANATOMY 470 (Lipponcott Williams & Wilkins 3d ed. 2007) (1995) ("The proximal digital crease is located at the root of the digit, approximately 2 cm distal to the metacarpophalangeal joint.").[6]

---

[6] Attached as Exhibit 7 to McHugh's Evidence.

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)



*Id.,* 470, Fig. D.                    '091 Patent, Figure 1.

Physicians, including H&B's nationally renowned orthopedic surgeon, Dr. Kleinert, refer to the gap at the base of the user's fingers as the "crease at the base of the base of the fingers." *See* U.S. Patent No. 6,389,601 File Wrapper, Affidavit Under Rule 132, p.3-4, 01/07/04 ("[E]ven physicians still often believe that the knuckles on the palm side of the hand are located at the creases at the base of the fingers . . knuckles, on the palm side of the hand are located at a significant distance, about 3/4", below the crease at the base of the finger.").[7] McHugh's construction is consistent with and compelled by the express language of the claims and the specification.

   H&B's construction is not. <u>First</u>, H&B's construction of the term "in a gap" improperly refers to the function and result of using the grip, not the location for the member in a user's hand. The structural language of claim 1 and its dependent claims mandates that those claims will not be limited by reference to functions described in the specification. *Schwing GmbH. V. Putzmeister Aktiengesellschaft,* 305 F.3d 1318, 1324 (Fed. Cir. 2002)("where a claim uses clear structural language, it is generally improper to interpret it as having functional requirements). Yet here, H&B ignores the structural language of the claims and construes the phrase "in a gap between a palm of the user's hand and the base of the user's fingers" to mean "filling the space or void above the palm

───────────────

[7] Attached as Exhibit 13 to McHugh's Evidence.

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

1    of the hand and below the base of the fingers to prevent the superficial transverse metacarpal

2    ligament, associated tissue, and skin of the palm extending over the base of the fingers when a

3    handle is grasped."

4        Second, H&B's language is inconsistent with the actual language of the specification from

5    which H&B appears to have cherry picked its construction, which reads as follows:

> One reason the grip 20 is successful is that it fills an unused portion or gap, of the
> hand 10 where the ligament 16 and associated tissue would otherwise cause the
> skin to overlap over the base of the fingers 14a-d. As shown in FIG. 3, as the hand
> 10 grasps a handle 30 with the grip 20 in place, the grip 20 distributes the force of
> the handle 30 over the entire contact surface without an overlap of skin.

9    '091 Patent, 3:19-25.  H&B seeks to add the limitation that the member component is somehow

10   "below the base of the fingers."  This addition is unsupported by the intrinsic evidence and intended

11   to create the non-infringement position that gloves with pads at the base of the fingers do infringe

12   the '091 Patent.

13       The express language of the claims and the physical limitations of the hand refute such a

14   construction.  The requirement that the retainer be "configured to extend around the backside" of a

15   user's fingers evidences the physical impossibility of H&B's construction.  Indeed, independent

16   claim 1 of the '091 Patent requires that the "retainer" be "connected to the member and ***configured***

17   ***to extend around the backside*** of at least one of the user's fingers." *See* '091 Patent, 5:11-17 (claim

18   1); *see also id.,* 5:32-47; 6:4-8 (dependent claims 4, 5, 6, 7 and 13) (emphasis added).  The

19   dependent claims and specification provide various embodiments for the retainer in claim 1,

20   including an elastic strap, a velcro strap, a T-shaped brace and a glove. *See* '091 Patent, 5:32-34,

21   5:35-39, 5:40-42, 5:43-47, 6:4-8.  With the exception of the glove embodiment, these preferred

22   embodiments cannot possibly be "configured to extend around the backside" of the fingers (as

23   required by the claims) and be connected to the member "located below the fingers" (as required by

24   H&B's construction).

25

26

27

28

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

1    For example, an elastic strap retainer that is

2    "connected to the member and configured to extend around

3    the backside of at least one of the user's fingers" cannot

4    physically result in a member located "below the base of

5    the fingers" as posited by H&B.   Figure 3 (provided here)

6    graphically illustrates this impossibility.   In order for the

7    member to be located below the base of the fingers, the



'091 Patent, Fig. 3

8    elastic strap retainer would have to pierce through the skin, muscle and bone of the hand.   The

9    same is true of the velcro strap and T-shaped bar retainer embodiments.

10    The "undulations" and "protuberances" dependent claims of the '091 Patent further

11    evidence the impossibility of H&B's construction.  *See* '091 Patent, 5:22-31 (claims 2 and 3).  A

12    member that "has a plurality of undulations *designed to accommodate the user's fingers* and a

13    plurality of protuberances *designed to fit between the user's fingers*" cannot physically result in a

14    member located below the base of the fingers as posited by H&B. *See id.*

15    Lastly, the one preferred retainer embodiment – the dependently claimed glove embodiment

16    – that does not pose a physical impossibility for adopting H&B's construction, expressly rebukes

17    H&B's construction.  Indeed, the specification states that glove embodiment retains the member in

18    place **over the base of the fingers**, not below the base of the fingers as required by H&B:

19    
20    Another embodiment is depicted in FIG. 5A, where a glove 50 includes an attachment 52 for a hand grip 20. Glove 50 is constructed so that material is formed over the gap near the base of fingers 14. This material includes attachments 52a and 52b *to hold grip 20 in place over the base of the fingers*.

21    '091 Patent, 4:31-36 (emphasis added).  H&B construction ignores this express language of the

22    
23    specification in its construction.

24    The term "in a grip" refers to a location in the hand, and its construction must be compelled

25    and consistent with the language of the claims and specification.  Accordingly, the Court should

26    construe the term "in a gap" to mean: "**in the proximal digital crease of the user's hand**."

27    **4.      The term "attachment" should be construed to mean "glove component which secures the member to the glove."**

28    The term "attachment" appears in the dependent glove embodiment claims of the '091

17

1   Patent. *See e.g.,* '091 Patent, 5:35-39 (claim 5); *id.,*6:4-8 (claim 13).  The following chart compares

2   the parties' constructions.

| McHugh's Construction | **Actual Language** | H&B's Construction |
|---|---|---|
| glove component which secures the member to the glove | **attachment** | a strap or long thin pocket |

6        The term "attachment" is a structure defined by the express claim language that follows it.

7   *See Innova/Pure Water*, 381 F.3d at 1116.  The term "attachment," as it appears in the glove

8   embodiment claims, "retain(s) the elongated member in a position adjacent to the base of the user's

9   fingers." '091 Patent, 5:35-39 (claim 5); *id.,* 6:4-8 (claim 13).  The specification further supports

10  McHugh's construction of "attachment" to mean a "glove component which secures the member to

11  the glove," stating:

12          Another embodiment is depicted in FIG. 5A, ***where a glove 50 includes an***
13      ***attachment 52 for a hand grip*** 20. Glove 50 is constructed so that material is
        formed over the gap near the base of fingers 14. ***This material includes***
14      ***attachments 52a and 52b to hold grip 20 in place over the base of the fingers***.
        *In FIG. 5, attachments 52a and 52b are elastic straps that retain the grip 20.*
15      *Alternatively, an attachment can be a single strap, a long thin pocket, or other*
        *similar retainer.*

16  '091 Patent, 4:31-39 (emphasis added).

17        In contrast, H&B's construction improperly limits "attachment" to a very specific subset of

18  structures.  As an initial matter, the specification states that that "an attachment can be a single

19  strap, a long thin pocket, *or other similar retainer*." '091 Patent, 4:31-39 (emphasis added).  H&B's

20  construction of "attachment" excludes "other similar retainers", despite being expressly identified

21  as an embodiment in the specification.  The Federal Circuit strongly disfavors such claim

22  constructions, declaring them "rarely correct." *See SanDisk Corp.,* 415 F.3d at 1285.   Moreover,

23  "if an apparatus claim recites a general structure without limiting that structure to a specific subset

24  of structures" as is the case here, courts "will generally construe the term to cover all known types

25  of that structure." *See Renishaw PLC,* 158 F.3d 1243, 1250  H&B's construction should be rejected

26  for these reasons.

27        Accordingly, the Court should construe the term "attachment" to mean: "**glove component**

28  **which secures the member to the glove**."

**C.**    **The Remaining Terms Submitted By H&B Do Not Require Construction.**

H&B submits five additional phrases for construction by the Court. None of these phrases require construction because each reflects their plain and ordinary meaning and there is no evidence of intent to deviate from that meaning. *See Altiris,* 318 F.3d at 1370.

     **1.**    **The phrase "adjacent to the base of the user's fingers" does not require construction.**

H&B tenders its construction of "adjacent to the of the of the user's fingers" to mean "*below* the base of the user's fingers" solely to establish its position that gloves with pads at the base of the fingers do not infringe the '091 Patent. The phrase appears in each of the claims – claims 1, 5, 12 and 13 of the '091 Patent – asserted against H&B for direct infringement. H&B's construction is improper because it deviates from the plain and ordinary meaning of "adjacent" without any intrinsic evidence to support such a deviation.

The term "adjacent" has the well-known plain and ordinary meaning of "close to" or "near." *See General American Transportation Co. v. Cryo-Trans, Inc.*, 93 F.3d 766, 769-70 (Fed. Cir. 1996) (discussing the required proximity of a wall "adjacent" to another location); *see also Haworth, Inc. v. Herman Miller, Inc.*, 37 U.S.P.Q. 2d 1080, 1085-85 (W.D. Mich. 1994) (construing the bounds of the term '"adjacent' as narrowly as 'next to' and as broadly as 'nearby'" and expressly noting that "[t]he word adjacent has well known, common sense, meanings that are not so technical as to require an expert's interpretation."). As this ordinary meaning is "readily apparent," construction of the term "involves little more than the application of the widely accepted meaning." *Phillips,* 415 F.3d at 1314. Indeed, dictionaries – which are helpful in such instances – provide such definitions. *Id., see e.g., American Heritage Dictionary* 21 (4th ed. 2000)("adjacent" defined as "close to, lying near"); *Webster's Third New International Dictionary, Unabridged,* Merriam-Webster (2002) ("adjacent" defined as "to lie near, border on"); *New Oxford American Dictionary of English* 1441 (2nd ed. 2005) ("adjacent" defined as "lying near to").[8] H&B's construction does not reflect this plain and ordinary meaning of "adjacent."

_____

[8] Attached as Exhibit 2 to McHugh's Evidence.

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

1    The intrinsic evidence offers no rationale for deviating from this plain and ordinary

2  meaning.  First, H&B's construction does not find support in the express language of the claims.

3  Claim 1, for example, reads, in pertinent part:

4      A hand grip . . . , comprising:
         an elongated resilient member . . . ***configured to fit at a base of the user's***
5  ***fingers*** in a gap between a palm of the user's hand and the base of the user's
    fingers; and
6         a retainer connected to the member and configured to extend around to the
    backside of at least one of the user's fingers to retain the member in the user's
7  hand ***adjacent to the base of the user's fingers***.

8  '091 Patent, 5:11-21 (claim 1) (emphasis added).  The member cannot be "configured to fit ***at*** a

9  base of the user's fingers" (as required by the claims) and be required to fit "*below* the base of the

10  user's fingers" (as required by H&B's construction). *See id.*

11    Second, the specification offers no rational for deviating from the plain and ordinary

12  meaning of "adjacent."  As discussed *supra* in Section III(B)(3) (regarding the term "in a gap"),

13  constructions that require the member be located below the base of the user's fingers are expressly

14  contracted by the specification and, generally, the physical limitations of the hand.

15    The specification states that the glove embodiment retains the member in place **over the**

16  **base of the fingers**, not below the base of the fingers as required by H&B:

17      Another embodiment is depicted in FIG. 5A, where a glove 50 includes an
    attachment 52 for a hand grip 20. Glove 50 is constructed so that material is
18  formed over the gap near the base of fingers 14. This material includes
    attachments 52a and 52b *to hold grip 20 in place over the base of the fingers*.
19
20  '091 Patent, 4:31-36 (emphasis added).

21    The '091 Patent further claims and references additional retainer embodiments – such as an

22  elastic strap, a velcro strap and a T-shaped brace – that would require the retainer to pierce through

23  the skin, muscle and bone of the hand if H&B's construction is adopted. *See e.g.,* '091 Patent, 5:32-

24  34, 5:35-39, 5:40-42, 5:43-47, 6:4-8.  For example, a T-shaped brace retainer that is "connected to

25  the member and configured to extend around the backside of at least one of the user's fingers"

26  cannot "retain the member in the user's hand" (as required by the claims) "below the base of the

27  user's fingers" (as required by H&B) without the "stem" portion of the T-brace piercing through the

28  user's hand.

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

1   The "undulations" and "protuberances" dependent claims of the '091 Patent further

2   evidence the impossibility of H&B's construction.  *See* '091 Patent, 5:22-31 (claims 2 and 3).  A

3   member that "has a plurality of undulations *designed to accommodate the user's fingers* and a

4   plurality of protuberances *designed to fit between the user's fingers*" cannot be retained below the

5   base of the fingers as posited by H&B. *See id.*   Accordingly, H&B's construction of "adjacent" to

6   mean "below" should not be adopted.

7   If any construction of the phrase is needed, the phrase "adjacent to the base of the of the

8   user's fingers" should be construed to mean "near the proximal phalanx A2 pulley region of the

9   user's fingers."  Similar to the medical reference location provided for the phrase "in a gap," the

10  proximal phalanx A2 pulley region of the user's fingers identifies the location of a user's hand

11  adjacent to the base of the user's fingers.  Such a construction is consistent with medical references

12  outlined in Figure 1 of the '091 Patent and the specification related thereto.  *See* '091 Patent, Fig. 1,

13  2:29-42.  Figures from medical encyclopedias and journals are provided to illustrate this location in

14  the hand in relation to Figure 1.



(DOYLE MD (*see* citation below).)



('091 Patent, Fig. 1.)

(NETTER MD (*see* citation below).)

Dolye MD. Anatomy of the finger flexon tendon shealth and pulley system.  J. HAND SURG. 1988;

13A:473-484; FRANK H. NETTER MD., ATLAS OF THE HUMAN ANATOMY 463 (Saunders Elsevier

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

1   4th ed. 2006) (1989).[9]  In sum, the phrase "adjacent to the base of the user's fingers" reflect the

2   plain and ordinary meaning intended by the claims, and as such, no construction of the phrase is

3   required.  To the extent that any construction is required, the phrase "adjacent to the base of the of

4   the user's fingers" should be construed to mean "near the proximal phalanx A2 pulley region of the

5   user's fingers."

6        **2.     The phrase "base of the of the user's fingers" does not require construction.**

7        Similar to "adjacent to the base of the user's fingers," the phrase "base of the user's fingers"

8   does not require construction.  Indeed, H&B offered no construction for the phrase "base of the

9   user's fingers" in its construction of "adjacent to the *base of the user's fingers.*"  *See* Section

10  III(C)(1) (H&B construes "adjacent to the *base of the user's fingers*" to simply mean "below the

11  *base of the user's fingers*").  This suggests that H&B understands the term "base of the user's

12  fingers" to have a plain and ordinary meaning.[10]  As such, it does not require construction.

13       To the extent that "base of the user's fingers" requires construction, it must be consistent

14  with the construction of "adjacent to the *base of the user's fingers.*"  *See Wilson Sporting Goods*

15  *Co. v. Hillerich & Bradsby Co.,* 442 F.3d 1322, 1328 (Fed. Cir. 2006) ("the same terms . . . should

16  have the same meaning unless it is clear from the specification and prosecution history that the

17  terms have different meanings at different portions of the claims.") (internal citations and

18  quotations omitted).  As discussed in detail in Subsection III(C)(1) *supra*, the construction of the

19  phrase "adjacent to the base of the user's fingers," to the extent it is required, should mean "near

20  the proximal phalanx A2 pulley region of the user's fingers."  Accordingly and for the same

21  reasons, any construction of the phrase "the base of the user's fingers" should mean "at the

22  proximal phalanx A2 pulley region of the user's fingers."

23       **3.     The phase "includes a plurality of sub-members" does not require construction.**

24       H&B seeks the convoluted construction of the phase "includes a plurality of sub-members"

25

26  [9] Attached as Exhibit 5 and 6, respectively, to McHugh's Evidence.

27  [10] McHugh notes that in all of H&B's other constructions, repeated terms are – unlike here –
    consistently construed.  *See* e.g., Subsection III(B)(1) (H&B construes "member" to mean, in part,
28  "grip"); Subsections III(C)(3-4) (H&B construes "member" to mean "grip").

1  to mean "includes two or more small grips incorporated into the long and narrow grip" in a further

2  attempt to establish its position that gloves with pads at the base of the fingers do not infringe the

3  '091 Patent. The phrase "includes a plurality of sub-members" appears in claim 12 of the '091

4  Patent. No construction is required because the phrase reflects the plain and ordinary meaning

5  understood by one of ordinary skill in the art.

6      The term "plurality" is a well-known term of art to mean "two or more." *See York Prods.,*

7  *Inc. v. Cent. Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1575 (Fed. Cir. 1996) ("The term

8  [plurality] means, simply, 'the state of being plural.'"). On its face, it appears that H&B's

9  construction adopts this plain and ordinary meaning and similarly does not offer an alternative

10  meaning for the term "includes" in its construction. Accordingly, the crux of the dispute between

11  the parties appears to be H&B's construction of the term "sub-members" to mean "small grips

12  incorporated into the long and narrow grip."

13      H&B's construction is wrong for several reasons. As an initial matter, the term "member"

14  cannot be construed to mean "grip." *See infra,* Subsection III(A)(1) (discussing how construing

15  "member" to mean "grip" improperly results in optional claim limitations). Second, the prefix

16  "sub" does not suggest the construction of "sub-members" to mean "small grips incorporated into

17  the long and narrow grip." Indeed, "sub" simply means subordinate. *See e.g., American Heritage*

18  *Dictionary* 1721 (4th ed. 2000) ("sub" defined as "subordinate"); *Webster's Third New*

19  *International Dictionary, Unabridged,* Merriam-Webster (2002) ("sub" defined as "subordinate

20  portion of"); *Webster's Encyclopedic Unabridged Dictionary of the English Language* 867 (1996)

21  ("sub" defined as "subordinate"); *New Oxford American Dictionary of English* 1441 (2nd ed. 2005)

22  ("sub" defined as "of a subordinate nature").[11]

23      Third, the claims and specification further abhor H&B's construction. With reference to

24  sub-member embodiments, the specification states:

25      FIG. 5B shows a glove 54 where grip 20 is broken up into four small grips 56a-d
       that provide support to one finger each. <u>This is be accomplished by incorporating</u>
26      <u>four grips (as small elongated members 56a-d) into each of the four fingers of a</u>
       <u>glove near the base of the fingers, as shown.</u>

27  ─────────────────

28  [11] Attached as Exhibit 4 to McHugh's Evidence.

PLAINTIFF MARK L. MCHUGH'S OPENING CLAIM CONSTRUCTION BRIEF
(Case No. C 07-03677 JSW)

'091 Patent, 4:41-44.  The term "incorporating" refers to how sub-members are incorporated into a retainer – in the above-referenced embodiment, a glove – **not** how sub-members are incorporated into one large member.  Indeed, claim 13 expressly claims this embodiment:

> A hand grip as in claim 12 [i.e., the sub-member embodiment], wherein:
>     the retainer is a glove configured to secure around the user's fingers and including an attachment to retain the elongated member in a position adjacent to the base of the user's fingers.

'091 Patent, 6:4-8 (claim 13).  The term "incorporating" does not otherwise appear in the '091 Patent.

Accordingly, the phrase "including a plurality of sub-members" does not require construction by the Court.  If a construction is required, McHugh offers the plain and ordinary meaning of the phrase as it is understand in the art; the phrase should be construed to mean: "includes two or more sub-members."

**4.    The phrases "retain the member" and "configured to fit" do not require construction.**

The phrase "configured to fit" does not require construction because it is a term that would easily understood by one of ordinary skill in the art.  As evidenced by McHugh's alternative construction of the phrase to alternatively mean "designed to fit," the parties agree about what an alternative construction of the phrase might be; however, McHugh contends that no alternative construction is required when the plain and ordinary meaning is clear on its face.  Indeed, claim construction is not meant to be an academic exercise in which a court pronounces the meaning of every aspect of a patent claim at issue.  Instead, "claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy." *NTP v. Research in Motion, Ltd.*, 418 F.3d 1282, 1311 (Fed. Cir. 2005), *cert. denied,* 126 S. Ct. 1174  (U.S. 2006) (*citing U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)) (emphasis added) .  In claim 1 alone, H&B has requested the Court to construe 50 of the 105 words in the claim.  Many of terms proposed by H&B– including "designed to fit" and as elsewhere noted in this brief – do not require construction.

The phrase "to retain the member" similarly does not require construction.  Like

24

1   "configured to fit," construing this phrase is merely an exercise in redundancy.  *See NTP,* 418 F.3d

2   at 1311.  If any construction is required, it must be consistent with and compelled by the claims and

3   intrinsic evidence.  Unlike H&B's construction of the phrase to mean "to hold or secure the grip,"

4   McHugh's alternative construction of the phrase "to retain the member" to mean "maintain the

5   position of the member in the user's hand" is supported by the intrinsic evidence.

6         The specification describes the retainer's ability to retain the member as follows: "A

7   flexible elastic band retainer 26 is provided to attach to the user's finger so that the grip 20 ***will***

8   ***remain in the proper position***."  '091 Patent, 2:55-57 (emphasis added).  The specification also

9   describes how certain preferred retainer embodiments, such as a glove with an attachment, retain

10  the member:

11        Another embodiment is depicted in FIG. 5A, where a glove 50 includes an
      attachment 52 for a hand grip 20. Glove 50 is constructed so that material is
12    formed over the gap near the base of fingers 14. This material includes
      attachments 52a and 52b *to hold grip 20 in place over the base of the fingers*.
13
14  '091 Patent, 4:31-36 (emphasis added).

15        Accordingly, to the extent that any construction is required, the phrase "to retain the

16  member" should be construed to mean: "maintain the position of the member in the user's hand."

17
18                              **IV. CONCLUSION**

19        For the foregoing reasons, McHugh respectfully request that the Court adopt his proposed

20  constructions for the disputed terms of the '091 Patent.

21
22  Dated:  July 10, 2008                    CARR & FERRELL *LLP*

23
24                              By:   /s/ Christopher Grewe
                                   ROBERT J. YORIO
25                                 V. RANDALL GARD
                                   CHRISTOPHER P. GREWE
26
                                   Attorneys for Plaintiff and Counter-Defendant
27                                 MARK L. MCHUGH

28